UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARCELLOUS L. WALKER,

    Plaintiff,

v.                         Case No. 22-C-960

ANTHONY BROADBENT and
GARY WARD,

    Defendants.

**DECISION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DISMISSING THIS CASE**

Plaintiff Marcellous Walker, an inmate at Fox Lake Correctional Institution, is representing himself in this 42 U.S.C. §1983 action. He is proceeding on claims based on allegations that Defendant Anthony Broadbent confiscated legal documents in violation of the First Amendment and that Broadbent and Defendant Gary Ward retaliated against him for engaging in protected First Amendment activity. On June 20, 2023, Defendants filed a motion for summary judgment. Dkt. No. 17. On October 26, 2023, Walker responded to Defendants' proposed findings of fact, but he did not file a memorandum of law addressing their legal arguments as required by Civil L. R. 56(b)(2)(A). *See* Dkt. Nos. 34, 35. For the reasons explained in this decision, the Court will grant Defendants' summary judgment motion and will dismiss this case.

**BACKGROUND**

**1. Confiscation of Legal Documents**

At the relevant time, Walker was incarcerated at the Wisconsin Secure Program Facility, where Broadbent worked as a corrections unit supervisor and Ward worked as a correctional

sergeant. On February 24, 2022, Walker was placed in temporary lockup (TLU) on an unrelated rule violation. That morning, many of Walker's papers were spread around his room. Among the papers were legal documents belonging to other inmates as well as documents that, according to Walker, he had prepared to assist other inmates with their lawsuits. Broadbent explains that, as he was organizing the documents to determine what property would be transferred to Walker while he was in TLU, he observed hundreds of pages of other inmates' court documents. None of these documents had envelopes with them, and Broadbent noted handwriting on the documents that he did not recognize as Walker's handwriting. Broadbent also noticed other documents specifically relating to Walker; these documents were primarily contained in envelopes. Dkt. No. 19 at ¶¶19–28.

Pursuant to Division of Adult Institutions (DAI) Policy 309.15.01, inmates are required to use the United States Postal Service to correspond and share documents with each other, and the envelopes associated with documents passed between inmates must be retained. The purpose for retaining the envelopes is to help staff keep track of personal property passed between inmates and to prevent the passing of illegal contraband. That same policy also forbids inmates from storing other inmates' legal work on their electronic storage devices. Similarly, DAI Policy 309.15.01 forbids inmates from using flash drives to save other inmates' legal work. And, finally, DAI Policy 309.56.01 clarifies that printing and storage of legal documents is restricted to an inmate's current or open cases. Defendants explain that the institution has an interest in ensuring other inmates actually want the assistance of the inmate who has possession of their documents to ensure filings are not being made in their cases without their knowledge. Documents obtained or maintained in violation of DAI policies are considered contraband and, pursuant to DAI Policy 309.20.03, are subject to confiscation. Dkt. No. 19 at ¶¶7-18, 37–38; Dkt. No. 36 at 4.

Broadbent explains that the documents that obviously belonged to Walker were retained for him for when he was released from TLU. As for the documents that apparently belonged to other inmates, Broadbent explains that he went to see Walker in TLU and asked him how the documents came into his possession. Walker did not respond. Broadbent then asked Walker if he could produce the envelopes in which the documents had been delivered to him. Walker explained that he had discarded the envelopes. A couple days later, Broadbent again asked if Walker could provide the envelopes in which the documents had been delivered; Walker could not. Dkt. No. 19 at ¶¶19–33.

Broadbent concluded that, because there were no envelopes demonstrating that other inmates had mailed their documents to Walker, the documents belonged to the other inmates and not to Walker. Broadbent then sorted the legal papers by inmate as best he could and delivered the documents along with a property receipt to each inmate. The inmates were free to mail the documents back to Walker consistent with DAI policy. Dkt. No. 19 at ¶¶34–37.

**2. Retaliation Claim**

Broadbent explains that he works with the security director to transfer inmates to different cells when necessary. The security director decides where an inmate will be housed based on security reasons. Ward did not have authority to move inmates to different cells except under specific circumstances, none of which applied to Walker. Defendants explain that Broadbent and the security director made the decision to move Walker to a different range within the same unit after he was released from TLU. A couple of weeks later, Walker was moved to a different unit. Both cells were in general population and there was no difference, other than location, between them. Broadbent denies that he assigned Walker to different cells to make it more difficult for him to assist other inmates with their legal work. Broadbent explains that, if other inmates wanted

3

Walker's assistance, they could request access to the law library at the same time or they could correspond by letter consistent with DAI policy. Dkt. No. 19 at ¶¶41–54.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

1. **No jury could reasonably conclude that Broadbent violated the First Amendment when he confiscated documents relating to other inmates' lawsuits.**

Walker first claims that Broadbent confiscated legal materials relating to other inmates' lawsuits in violation of the First Amendment. As a prisoner, Walker "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier,* 417 U.S. 817, 822 (1974).

4

However, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Id.* The question of whether a policy violates plaintiff's constitutional rights, is governed by the standard established in *Turner v. Safley,* 482 U.S. 78, 89 (1987), under which a prison regulation that impinges on prisoner's constitutional rights is valid if it is "reasonably related to legitimate penological interests." *See Bridges v. Gilbert,* 557 F.3d 541, 551 (7th Cir. 2009).

The Court considers four factors when evaluating a policy's constitutionality: "(1) the validity and rationality of the connection between a legitimate and neutral government objective and the restriction; (2) whether the prison leaves open 'alternative means of exercising' the restricted right; (3) the restriction's bearing on the guards, other inmates, and the allocation of prison resources; and (4) the existence of alternatives suggesting that the prison exaggerates its concerns." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012).

As to those documents that Walker received from other inmates, the institution has a legitimate penological interest in requiring inmates to mail each other their documents rather than permitting them to hand deliver them to one another. As recent changes to the Department of Corrections policies demonstrate, requiring inmates to mail their documents to a third-party vendor who processes the originals and delivers photocopies in place of the originals assists the institution in preventing dangerous drugs from being passed among inmates through paper. *See https://doc.wi.gov* (Money, Mail & Property, Important Changes Regarding Personal Mail). It follows, therefore, that the institution also has a legitimate penological interest in requiring inmates to maintain proof that they obtained another inmate's documents through the mail. Requiring an inmate to retain the envelope in which documents were sent does not burden an inmate, but it does save officers valuable time and resources because they can quickly verify that documents were exchanged in compliance with DAI policies.

Walker alleged in his complaint that he had had many of these documents in his possession before the relevant policies were in place, but Defendants have disproven Walker's allegation. The undisputed facts show that none of the challenged documents could have been in Walker's possession before the effective date of the relevant policies. Thus, Walker knew of the policies at the time he discarded the envelopes. Although Walker told Broadbent that other inmates had mailed the documents to him, Broadbent was not required to believe Walker. *See Riccardo v. Rauch*, 375 F.3d 521, 527 (7th Cir. 2004) ("The Constitution does not oblige guards to believe whatever inmates say."). Walker also asserts that nothing in the relevant policies permits staff to confiscate non-compliant documents. But, as Defendants explain, any document possessed in violation of DAI policies is considered contraband and therefore subject to confiscation. In short, given the penological justification for requiring proof that documents are possessed consistent with DAI policies, no jury could reasonably conclude that Broadbent violated the First Amendment when he confiscated other inmates' documents that were in Walker's possession.

Walker next asserts that Broadbent violated the First Amendment when he confiscated documents that Walker himself had created. Broadbent explains that many of the documents Walker had in his possession were computer-generated rather than typed on Walker's personal typewriter. Possessing those documents therefore violated DAI policies prohibiting inmates from storing other inmate's documents on their electronic devices and printing legal documents related to cases other than their own open cases. Defendants explain that these policies are in place to help ensure an inmate has other inmates' permission to possess and create legal documents in their cases, a concern that is not without basis. *See, e.g., Halford v. Frederick*, No. 21-C-279 (E.D. Wis.), Dkt. No. 38 (letter from institution confirming that documents had been filed by an inmate posing as the plaintiff in order to harm the plaintiff). Therefore, any document involving another inmate's case that had been printed (as opposed to typed on Walker's personal typewriter) violated DAI policies and was deemed contraband subject to confiscation.

As to those legal documents concerning other inmates' cases that Walker had typed on his personal typewriter, Broadbent explains that they were scattered within hundreds of pages of documents that Walker possessed in violation of DAI policies. Broadbent explains that it would have taken a significant amount of time to examine each page to identify those pages that Walker had typed in compliance with DAI policies. Accordingly, Broadbent sorted the documents by inmate and returned the documents to each inmate with the understanding that he could mail the documents to Walker in compliance with DAI policies if he should so choose. It is hard to conceive how Broadbent giving documents to the inmates for whose benefit Walker created the documents harmed Walker. In any event, given that Broadbent did so to conserve his time and resources, a valid penological justification supported his decision. *See Jackson v. Frank*, 509 F.3d 389, 391 (7th Cir. 2007) (holding that "the defendants' economic interest in saving staff resources is legitimate"). Walker decided to violate multiple DAI policies and made no effort to separate the documents that violated policies from documents that complied with policies. Walker, not Broadbent, bears the consequence of that decision. Broadbent is therefore entitled to summary judgment on this claim.

2. **No jury could reasonably conclude that Defendants retaliated against Walker when he was transferred to a new cell.**

Walker next asserts that Defendants retaliated against him when they transferred him to different cells after he was released from TLU. "To establish a prima facie case of unlawful retaliation, a plaintiff must show (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (citations omitted).

Walker's claim fails because he does not create a triable issue on the latter two elements. "[W]hen the asserted injury is truly minimal," a court can resolve as a matter of law the issue of whether a person of ordinary firmness would be deterred from engaging in protected First

7

Amendment activity. *Douglas*, 964 F.3d at 647. The Seventh Circuit has explained that being transferred from one cell to another, on its own, without other additional factors such as being transferred to a much more restrictive or dangerous environment, is not likely to deter protected activity. *Id.* Walker does not dispute that the two cells he was transferred to following his release from TLU were both in general population and, apart from location, were identical to the cell he was housed in prior to being placed in TLU. Further, Walker does not dispute Broadbent's assertion that he did not transfer Walker to new cells to make it more difficult for him to assist other inmates with their lawsuits. Given that Walker presented no evidence from which a jury could reasonably conclude that his cell transfers ran afoul of the Constitution, Defendants are entitled to summary judgment on this claim.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' motion for summary judgment (Dkt. No. 17) is **GRANTED** and this case is **DISMISSED**. The Clerk of Court shall enter judgment accordingly.

Dated at Green Bay, Wisconsin this 16th day of January, 2024.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.